HELEN L. THOMAS v. CITIZENS PASS. RY. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF MONTGOMERY COUNTY.

Argued February 3, 1890—Decided February 24, 1890.
[To be reported.]

1. The mere opinion of a witness, who saw a collision between a street car and a carriage but has no knowledge or experience as to the stopping of cars or handling of brakes and has testified to no specific act of negligence, that the driver of the car could have stopped it upon a descending grade in time to avoid the collision, is of little importance as proof of negligence on the part of the driver: Phila. Traction Co. v. Bernheimer, 125 Pa. 615.

(a) The plaintiff, driving a phaeton, attempted to cross a street railway track in front of a horse car approaching at a trot upon a descending grade. The distance of the car from her at the time was in dispute. Before starting to cross, she knew, from the tinkle of the bells upon the horses, that the car was approaching, but was prevented from seeing it by the curtains of the phaeton. As her horse stepped upon the track she saw the car, but, concluding that she had time to cross, she kept on.

(b) Just before she turned to cross, the driver of the car looked to one side, along a cross street, to see whether there were any passengers upon it desiring to board his car. There was no evidence that his attention was thus diverted unnecessarily or for any unreasonable time. As soon as he saw the plaintiff's vehicle on the track, he energetically applied the brake and swung his horses over to one side of the track, but, notwithstanding, the car collided with the phaeton before the latter had passed over the rails:

2. The fact that in these circumstances the driver failed to stop the car in time to prevent the collision, was not sufficient evidence of negligence on the part of the passenger railway company to justify the submission of the case to the jury; moreover, as the plaintiff was guilty of contributory negligence in thus driving upon the track in front of the moving car, the company would be responsible, if at all, only for a wanton neglect of duty by the driver, of which there was no evidence.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 473 January Term 1889, Sup. Ct.; court below, No. 127 March Term 1888, C. P.

On February 20, 1888, Helen L. Thomas brought trespass

against the Citizens Passenger Railway Company of Norristown, Pa., to recover damages on account of a collision between a street car of the defendant company and the plaintiff's carriage, alleged to have occurred through the defendant's negligence. The defendant's plea was not guilty.

At the trial on December 19, 1888, the following facts were shown: The defendant company maintains and operates a street railway in the borough of Norristown. Its cars are drawn by horses over a single track laid along the middle of Main street. On the afternoon of December 5, 1887, the plaintiff drove down that street in her phaeton, and stopped and hitched her horse in front of a store below the corner of Main and DeKalb streets, his head pointing down Main street. When she had attended to some errands she returned, and, unhitching the horse, got into the phaeton. After doing so and before starting her horse, she heard the tinkle of the bells upon the horses attached to one of the defendant's street cars, approaching from behind her upon Main street, on a descending grade. She tried to look back along the street, but the phaeton being closely curtained, she was unable to see the car. She started with the intention of driving down the street a few steps, crossing the rails and proceeding up the street again on the opposite side of the track, thus describing a curve almost in the form of a semi-circle. When she reached the rails and her horse had just started across them, she first caught sight of the car, her view having been obstructed until then by the curtains of her carriage.

The plaintiff testified that when she saw the car she did not turn back to let it pass, because it was at least thirty feet from her, and she had reason to think there was time to cross in front of it; did not think there was any risk about it. When, however, the phaeton was almost half way over the track, the car collided with it, wrecking it and injuring the plaintiff's horse, and, although she herself was not physically injured, she suffered afterward from a shock to her nervous system occasioned by the fright connected with the collision. The plaintiff called, also, Charles M. Wilson, George Holland and Andrew Fox, all of whom witnessed the accident. Their testimony tended to show that the horses drawing the car were proceeding down Main street at a pretty good trot; that, as

Statement of Facts.

the car crossed over DeKalb street, the driver looked to one side, along that street, though his head was not turned that way very long; that when his horses had crossed over DeKalb street, but his car was still on it, and Mrs. Thomas's horse was just stepping on the car track, about twenty-five feet in advance of the car, Wilson called to the driver to hold on, or he would run into the lady's carriage; that no whistle was sounded by the driver, and the car kept on until it struck the phaeton. Holland said that he did not suppose the accident would have happened if the driver had not looked down DeKalb street, and Wilson and Fox expressed the opinion that he had time to stop the car after Mrs. Thomas started to cross the track. Neither of these witnesses, however, was shown to have any experience or knowledge in the matter of stopping street cars. Wilson testified that he saw the driver apply the brake and swing his horses around to one side, until they were outside the track. Portions of the testimony for the plaintiff are more fully stated in the opinion of the Supreme Court, infra. A plot which was in evidence for the plaintiff, tended to show that the distance between the positions occupied by the car and phaeton respectively, according to the testimony of her witnesses, at the time the plaintiff started to cross the track, was greater than any of the estimates placed upon it by witnesses, and was in reality somewhere near fifty feet.

At the close of the plaintiff's testimony, the defendant moved for judgment of compulsory nonsuit. The court, WEAND, J., refused the motion, delivering an oral opinion which is quoted in the opinion of the Supreme Court, infra. The defendant then called witnesses whose testimony tended to show that, at the crossing of DeKalb street and afterward, the car was going not faster than at the rate of four or five miles an hour; that the driver was holding the reins in his left hand and had his right hand on the brake; that while crossing DeKalb street he looked to each side, in compliance with a rule of the company, to see whether there were any persons on that street desiring to take passage on his car; that as soon as he saw the plaintiff's carriage on the track, he applied the brake and exerted all his force to stop the car, and that, occupied as he was, he did not have time to whistle. Charles Mathias, the driver of the car, testified that he could have stopped it in fifteen or twenty feet,

depending upon the gait at which he was going ; that when he first saw the plaintiff, she was driving along side of him, and she whipped up her horse and attempted to cross the track immediately in front of his horses, and so close to them that the off horse threw his head around to let her pass. Charles A. Boettcher, who was a passenger upon the street car, testified that the plaintiff's phaeton was about ten or eleven feet in front of the street-car horses when she attempted to cross the track. The testimony of other witnesses for the defendant tended to show that the distance between the vehicles was less than fifteen feet.

At the close of the testimony the court, WEAND, J., charged the jury in part as follows :

Under the common law, as well as under the statutory law, or ordinances of council, and because of the very necessity and the nature of a street railway, the company is entitled to certain privileges, because they are confined in this mode of travel to the rails, and it necessarily follows that it cannot conveniently turn from its track or avoid certain threatened dangers as can foot passengers or persons with other vehicles. And therefore, it would seem to be the duty of a person traveling in an ordinary vehicle along the streets of a borough in which a street railway is laid, before attempting to cross it, to look to see whether there is an approaching car. A failure to do so, if a person would cross immediately in front of a car, would be such contributory negligence as would prevent the recovery for damages ensuing thereby. So it would be if a person were to attempt to cross a street without looking, immediately in front of an approaching carriage, because one person has no right to cross a street without looking to see whether there is threatened danger.

Now, then, every person in Norristown has a right to cross the tracks of this railway company, provided they do so in a proper manner. A person approaching a car on a street railway is bound to give the right of way to the car for the reasons I have stated, and so a person driving alongside of a street car in the same direction in which it is going would have no right to attempt to cross the track, if by doing so the car would be obliged to stop, because the car would have the right of

Charge of Court below.

way.  But if a person attempts to cross the tracks at what might appear to be a safe and convenient distance, and if, being in that position, a car should approach and the driver in the course of his duty should see a person in that position, it would be his bounden duty, if he could, to stop his car and not to run down the person so situated.  And therefore, [although in this case you should find that this lady may have attempted to cross this track, at what might have appeared to be an unsafe distance, yet if, being in that position, the driver of the street car could have seen her, or did see her, and could have stopped his car in time to avert the accident, it was his duty to have done so, and if he did not, his company would be liable for damages.] [3]  Therefore as a result of this, if you should find that this accident was occasioned by the negligence of Mrs. Thomas, she cannot recover, no matter to what extent that negligence contributed to the accident.  If it contributed in any manner to the accident she cannot recover.  But if it was occasioned by the failure of this street-car driver to stop his car, if he could have done so, then she could recover and the company is liable.  Now, keeping in view this principle, let us briefly examine the testimony of this case. . . . .

Now, gentlemen of the jury, keeping in view the distances, as testified to by the various witnesses, in your opinion was this driver careless in not stopping his car from the time when he saw, or ought to have seen her, after he crossed DeKalb street?  [You will remember this distance is estimated to be from twenty to thirty feet, and he testifies his car could be stopped within a distance of fifteen or twenty feet.] [4]  He had a right to look up and down DeKalb street for approaching passengers, provided it did not interfere with his sight of obstacles on the road before him; for, although this company might by its rules and regulations require its drivers to look for passengers, his primary duty was to look in front of him, so as to avoid accident from persons approaching or crossing his track.  Now, [if you find that from the time when he crossed DeKalb street he could have seen this lady crossing the tracks, by the proper performance of his duties, and if he ought to have seen her, and that he had time to stop before he struck her and did not, then he would be guilty of such negligence as would render his company liable in this action.] [5]

### Charge of Court below.

You will remember all the testimony relating to this particular part of the case, as testified to by Mrs. Thomas, Mr. Wilson, Mr. Fox and Mr. Holland, and say from that as to whether this driver was guilty of negligence, if you find that she crossed this track at the distance specified by her witnesses.

On the part of the defendant, however, it is claimed that this lady crossed this track immediately in front of the horses of this car. The driver testifies that he had the lines in his hands; that he had tight reins; that he had his hand on the brake; that the car was slow; and that as he was going down the street past Yost's store this lady was driving opposite his car, and that without any notice to him, she crossed, or attempted to cross immediately in front of his horses, almost touching the head of the near horse, and that this compelled him to pull his horses to the left, suddenly put on the brake, and thus cause the collision. If you find that statement to be true, then I charge you as a matter of law that there can be no recovery in this case; because, if this lady drove alongside this car, she necessarily must have known it was there, and if she did know it was there, she had no right to turn her horse across the tracks in the manner testified to by the driver of the car. The defendants have also called another witness who was a passenger in this car, Mr. Boettcher, whose testimony varies to some extent from that of the driver, and partly, however, corroborates him. He states that he saw this wagon crossing this track and, when it did so cross, it was not more than ten feet from the head of the horses. Now, gentlemen of the jury, if she attempted to cross at that distance from these horses' heads, was or was not that a negligent act on her part? Could the street-car driver, without any notice, stop his horses within the distance of ten feet, and ought she not to have known that it was dangerous thus to attempt to cross, when the car was coming upon her at that distance? This, however, is a question for you to decide as to whether that part of it was negligence. I instruct you that if she attempted to cross immediately in front of the horses, that in law would raise the presumption of negligence, but [you are to decide as to whether it would be negligence if she attempted to cross at a distance of ten, or fifteen or twenty feet from the car.] [6] . . . . .

The defendant has requested me to charge you upon several points of law:

### Arguments.

1. Driving across the car track, from twenty to thirty feet in front of an approaching car, was negligence on the part of the plaintiff.

Answer: This is for the jury to decide, as to whether or not it was negligence thus to drive across.[9]

2. If the plaintiff was guilty of any contributory negligence she cannot recover.

Answer: This is affirmed.

3. Under the law and the evidence, the verdict should be for the defendant.

Answer: This is refused.[10]

The verdict of the jury was in favor of the plaintiff for $169.75. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendant took this appeal, assigning for error [inter alia]:

3–6. The parts of the charge embraced in [ ] [3 to 6]

9, 10. The answers to the defendant's points. [9] [10]

*Mr. Joseph Fornance* and *Mr. Irving P. Wanger*, for the appellant:

1. If the plaintiff's negligence contributed in any way to the furthering of the injury complained of, there can be no recovery: Creed v. Penna. R. Co., 86 Pa. 145; Thirteenth etc. Pass. Ry. v. Boudrou, 92 Pa. 475; Waters v. Wing, 59 Pa. 211; Catawissa R. Co. v. Armstrong, 49 Pa. 193. That she could not see the car before she drove on the track, was her own fault. With knowledge from the tinkle of the bell that it was near, she attempted to cross, and her carelessness in this should preclude her recovery: Marland v. Railroad Co., 123 Pa. 487. In her manner of crossing after she saw the car, she took a hazardous risk, and there was such a lack of prudence on her part as amounted to gross negligence: Goshorn v. Smith, 92 Pa. 438.

2. It was error in the court to submit to the jury the question whether it was negligence for the plaintiff to cross the car track ten feet in front of the approaching car. Plaintiff's whole team was about ten feet long. A street car is about 6 feet wide. Therefore, in crossing the car track at right angles, such a team must cross a dangerous path 16 feet wide. A car going 5

Arguments.

miles an hour runs more than 7 feet in a second. To escape a collision, the entire team would have to cross the 16 feet in less than 2 seconds. To undertake such a risk would be gross carelessness. Her team could hardly get entirely across in 4 seconds. Moreover, she tried not merely to cross the track, but actually to turn her team on the track in front of the approaching car, as she herself testified.

3. The burden of proving negligence on the defendant's part was on the plaintiff: McCully v. Clarke, 40 Pa. 399. She did not do this. She showed neither fast nor careless driving. The testimony of her own witness, Wilson, shows that the driver used every effort to stop the car and avert the accident. The expression of opinion by Wilson and Fox, that there was time to stop the car, amounted to nothing, as these witnesses were not experts: Phila. Traction Co. v. Bernheimer, 125 Pa. 615. There being no proof of negligence, it was not to be inferred: Phila. etc. R. Co. v. Yerger, 73 Pa. 121; and the court should have instructed the jury to find for the defendant: Gerety v. Railroad Co., 81 Pa. 274; Baker v. Fehr, 97 Pa. 70; Erie City v. Magill, 101 Pa. 616; Barnes v. Sowden, 119 Pa. 53; Delaware etc. R. Co. v. Cadow, 120 Pa. 559.

*Mr. N. H. Larzelere* (with him *Mr. M. M. Gibson*), for the appellee:

It would seem to us that the law relating to negligence and contributory negligence, as discussed and applied in Thirteenth etc. Pass. Ry. v. Boudrou, 92 Pa. 475, cited by appellant, rules this case. What was the juridical cause which made the accident possible. Was it the fact that Mrs. Thomas undertook to cross over the street, with a passenger car 30, 40 or 50 feet from her, or was it the omission on the part of the driver to begin the reduction of speed in proper time so as not to run her down? If it is negligence upon the part of plaintiff to cross a track under such circumstances, still it was but the remote cause, and that of the defendant the proximate cause; for, first, the defendant should manage its line so it could stop a car in less distance than that; and second, the driver admitted the car could be stopped in 15 or 20 feet, and he failed to do it in double the distance.

OPINION, MR. JUSTICE CLARK:

The plaintiff in this case, Helen L. Thomas, concedes that if the conductor or driver of this car could not have stopped it in time to avert the accident he was guilty of no negligence; but her contention is, that if he could have done so, and did not, he was negligent, and she is entitled to recover. The only negligent act complained of, therefore, is that the conductor did not stop the car before the collision occurred.

The plaintiff testifies that she was going down Main street on one side of the track, and that her intention was to cross the track, and go up the same street on the other side. In doing this she would necessarily be obliged to pass on, over, and off the track in the form of a semi-circle. The driver might well have supposed, in the first instance, that she was merely turning on the track in front of him; he could only discover her full intention when she had gone far enough to indicate her purpose to cross over. She says that at the time she undertook to cross, the car was thirty feet or more distant from her, and she thought there was time to cross. Mr. Wilson, the plaintiff's witness, says he was standing at the corner of Main and DeKalb streets; that just as the plaintiff's horse was about to step on the track he saw the car; that the conductor was at the moment looking down DeKalb street, presumably for passengers, and that he called to him, "Hold on, or you will run into that lady's carriage." Whether the driver heard him or not he does not know; the car was twenty or twenty-five feet off at the time, and he did not think she could cross. He says the driver applied the brakes and swung his horses to the left, around outside of the track, to prevent a collision, but the tongue struck the phaeton, and the horses were thrown against the wheels, producing the injury complained of. On cross-examination, he says that when he first noticed the car "it was pretty near right on her; her horse had one foot just about to step on the track," but he thought the driver had time enough to stop. Mr. Fox testifies that when he first saw the car it was above DeKalb street, in front of Baker's drug store, and that from the time he first saw it the driver had time enough to stop before he got to the phaeton. These witnesses, however, had no knowledge or experience whatever of the handling of cars or of operating the

brakes, and it must be conceded that, as they testify to no specific act of negligence, their mere opinion as to whether or not the driver might or might not have been able to stop the car in time, on a descending grade, was of little importance: Phila. Traction Co. v. Bernheimer, 125 Pa. 615. Mr. Holland says, if the driver had not looked down DeKalb street, he does "not suppose that the accident would have happened." This is substantially all of the testimony on part of the plaintiff bearing upon the question of the defendant's negligence, and upon this meagre and unsatisfactory proof the court submitted that question to the jury. Mathias was both driver and conductor of the car, and when he was crossing DeKalb there was no one in front of him on the track, and no one offering to cross. Under these circumstances, it was certainly no act of negligence to observe whether there were passengers desiring to board the cars on that crossing. There is no evidence that his attention was unnecessarily, or for any unreasonable time, withdrawn from a view of the track. Nor is there any evidence that he failed to apply the brakes promptly and energetically when the exigency arose. No witness has suggested that the driver did anything which he should not have done, or that he failed to do anything which he could have done, to avert the accident. On the contrary, the proof on both sides is consistent, clear, and positive that the brakes were applied at once. Mr. Berndt says he heard the clink of the brake, and noticed that the driver put on all his force. Whatever may have been the distance between the car and the phaeton when Mrs. Thomas undertook to cross the track, (and this is variously stated by the witnesses,) it is plain that, notwithstanding the efforts of the driver to stop the car, the collision occurred. Upon this state of facts we are of opinion that the court erred in submitting the question of the defendant's negligence to the jury; there was not, we think, sufficient evidence to justify an inference of the negligent act alleged.

But, assuming that the conductor, by an ordinary or an extraordinary effort, could have stopped his car in time to prevent the injury, a question still arises as to whether or not the plaintiff was not also guilty of negligence in attempting to cross the track in front of a moving car. The car was confined in its course to the rails; it could be turned neither to

Opinion of the Court.

the right nor the left; it was running at the usual rate of four or five miles an hour, upon a descending grade, and could not be stopped as readily or as quickly as her horse, which was moving at a slow walk. She knew that a car was coming, and was near, for she admits that she was warned by the bells; but the phaeton was curtained, and the curtains were down, and she could not see the car until her horse was turned upon the track. The car she says was thirty feet distant, and she had reason to think there was no risk, and that she had time to cross. She would seem to have taken the chances, and assumed the risk.

Assuming that it was the duty of the driver, in order to prevent a collision, to use ordinary and reasonable efforts to stop the car, the company, upon the facts of this case, was, we think, only responsible, if responsible at all, for wanton neglect, of which there is not the slightest proof. The plaintiff was without doubt, according to the testimony of her own witnesses, guilty of negligence in driving her phaeton right in front of a moving car. She had a right to drive on the public streets, and at any point over the company's tracks, for they were laid in the street; but in doing so she was held to the exercise of ordinary care. The company, also, had a right to run their cars upon their tracks longitudinally with the street, at such reasonable rate of speed as was consistent with the safety of the traveling public; indeed, in a certain sense, the company had precedence over the ordinary travel, for, their cars being confined to the track, other vehicles must of necessity turn out, and give the cars opportunity to pass. The plaintiff knew that cars were passing and repassing upon these tracks, and before undertaking to cross she was bound to look and see that no car was coming with which she might collide. She cannot be excused from this duty because the curtains were down, and she could not see; that very fact called for a more careful observation, especially as she had been warned by the bells. The distance she was in front of the car, at the time, is variously stated by the witnesses, but the whole current of the testimony shows that, although the brakes were promptly applied, and the speed of the car checked, yet the collision occurred.

When the plaintiff's case was closed, the defendant moved

Opinion of the Court.

for a compulsory nonsuit, and the court refused the motion. Whilst this action of the court is not, and could not be, assigned for error, yet the views expressed by the learned judge of the court below, as the ground of refusal, illustrate in the clearest manner the error into which he appears to have fallen in his charge to the jury. He says: "Whilst it is undoubtedly true that contributory negligence on the part of the plaintiff would defeat a recovery, as I understand the law, although she may have been negligent in her manner of entering upon the tracks of this railroad company, yet if the driver of the car, when he was a sufficient distance from her to have averted the accident, could have done it, it was his duty to do so. Although she may have been an original trespasser in going upon the track, and have been negligent in crossing in the manner she did, it was his duty, if he could have done so, to have averted this accident. If he saw her about to cross, and did not take proper measures to stop the speed of his car, if it was through his neglect, after he discovered that she was upon the track, that the accident occurred, she would be entitled to recover." The learned judge, it is true, very properly charged the jury that if the injury was caused by the negligence of Mrs. Thomas, or if her negligence contributed in any manner to it, she could not recover; but this instruction seems, in each instance, to have been qualified by the statement that, although, by her failure to look, she may have placed herself in a place of manifest danger in front of the car, yet it was the duty of the driver, observing the situation, to stop the car, and if by any means he could have done so, and did not, the company, notwithstanding her negligence, was responsible in damages for the injury. "Although in this case," says the learned judge in his charge, "you should find that this lady may have attempted to cross this track at what might have appeared to be an unsafe distance, yet if, being in that position, the driver of the street car could have seen her, or did see her, and could have stopped his car in time to avert the accident, it was his duty to have done so; and, if he did not, his company would be liable for damages. Therefore, as a result of this, if you should find that this accident was occasioned by the negligence of Mrs. Thomas, she cannot recover, no matter to what extent that negligence contributed to the accident;

Opinion of the Court.

if it contributed in any manner she cannot recover." "But," he continues, " if it was occasioned by the failure of this street car driver to stop his car, if he could have done so, then she could recover, and the company is liable."

It is plain, we think, that Mrs. Thomas, by her own negligent act, had no right to impose extraordinary duty or obligation upon the defendant. If, instead of a street car, this had been a train of railroad cars, running at the usual rate of speed, and approaching a road crossing, with the customary warnings and signals, it would certainly not be pretended that this lady would have been justified in going upon the track with her phaeton, if in case of injury, she could afterwards show that the train might somehow have been stopped in time to prevent the injury. This would dispense with the whole doctrine of contributory negligence, as declared in the decisions of this court. If the plaintiff's negligence contributed to the injury, under the facts of this case, she cannot recover; this is too well established in Pennsylvania to admit of any question, or to require the citation of authorities.

In establishing the negligence of the company, the burden of proof is upon the plaintiff, and we think she has failed in establishing a state of facts from which negligence could be fairly inferred. And, although she is not required to prove the absence of contributory negligence in the first instance, it is incumbent upon her to show a case clear of contributory negligence on her part, and this she has not done. Her own testimony, taken with that of her own witnesses, clearly convicts her of negligence, which was the principal, if not the sole, cause of the injury.

The judgment is reversed.