## Morrow *v.* Delaware County and Philadelphia Electric Railway Company, Appellant.

*Negligence—Street railways—Negligence in driving along a road on which there is an electric railway.*

The duty of a person driving along a highway in a cart loaded with lumber placed crosswise on it, and projecting in front of it up to the head of the horse, and with a trolley track on the side of the road over which a car may come at any moment, is to look forward and not backward, and to keep in the road, wide enough to do so, at a safe distance from the track. If he looks backward at a team attempting to pass him, and runs into a car and is injured, he cannot recover from the railway company.

Argued March 25, 1901. Appeal, No. 205, Jan. T., 1900, by defendant, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1895, No. 548, on verdict for plaintiff, in case of Alexander Morrow *v.* Delaware County and Philadelphia Electric Railway Company. Before MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before McMICHAEL, J.

The facts are fully stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $8,000. Defendant appealed.

*Error assigned* was in submitting the case to the jury.

*Frank P. Prichard,* for appellant.—Plaintiff was guilty of contributory negligence: Ehrisman v. East Harrisburg City Pass. Ry. Co., 150 Pa. 180; Thomas v. Citizens' Pass. Ry. Co., 132 Pa. 504; Boehmer v. Pittsburg, etc., Traction Co., 194 Pa. 313; Patton v. Philadelphia Traction Co., 132 Pa. 76; Warner v. Peoples' St. Ry. Co., 141 Pa. 615; Smith v. Electric Traction Co., 187 Pa. 110.

*James Gay Gordon,* with him *Francis G. Taylor,* for appellee. —The case was for the jury: Gibbons v. Wilkes-Barre, etc., St. Ry. Co., 155 Pa. 279; Kestner v. Pittsburg, etc., Traction Co.,

158 Pa. 422; Thatcher v. Central Traction Co., 166 Pa. 66; Harper v. Phila. Traction Co., 175 Pa. 130; Smith v. Phila. Traction Co., 3 Pa. Superior Ct. 130; Lenkner v. Citizens' Traction Co., 179 Pa. 487; Davidson v. Schuylkill Traction Co., 4 Pa. Superior Ct. 86.

OPINION BY MR. JUSTICE BROWN, April 22, 1901:

That the carelessness of the appellee not only contributed to, but was the controlling cause of, the collision resulting in injuries so serious to him, is a conclusion not to be avoided. On a clear winter morning, about nine o'clock, he started from a lumber yard with a load of boards. These boards were about twenty feet long, piled crosswise on an ordinary two-wheeled cart, and extended diagonally across each other, about on a line with the shafts, as far as the horse's head. The appellee, sitting on these boards on the right side of the cart, drove out of the lumber yard and turned southward on the Baltimore pike. The track of the railway company was on the turnpike, on the side opposite the lumber yard, and was on the right of the appellee as he was driving along the road. The space between the trolley track and the gutter on the opposite side is twenty-four and a half feet. After the appellee had left the yard and was some distance on the pike, a car of the appellant, coming towards him from the south, struck the boards projecting from the cart, and he was thrown violently to the ground, sustaining most serious injuries. His testimony and that of his witnesses clearly establishes the fact that he was not struck by the car as he was turning on the pike in leaving the lumber yard, but after he was fairly on his way some distance from the yard. He himself says that he had started up about the middle of the turnpike, and, according to the testimony of James H. Cooper, called by him to give actual measurements made, he was on the pike 175 feet from the center of the entrance to the lumber yard when the collision occurred. Before the boards were struck by the car, according to another witness called by him, he was driving along with a clear space of two or three feet between the hub of his cart wheel and the track. So driving along, he would have had a clear and unobstructed view of the approaching car, if he had been looking ahead of him, as it most certainly was his duty, in driving this cart with its load

of boards placed crosswise on it and projecting from it; but he says he did not see the car, and, on the trial, testified: "If I had seen it, I would not have been here now, I guess." He gave no reason, however, why he had not seen it. Though his memory was affected by the injuries received, and he was not able, when testifying, to recall what had occurred at the moment of collision, nor to distinctly remember subsequent events, his recollection of everything from the time he started for the lumber yard until he left it and was fairly on his way home on the turnpike, was clear and intelligent. He did not testify that he was looking ahead of him as he drove along; and, with nothing more than his own testimony before us, the inference is irresistible that either he did not look, or, if he did, that he carelessly and recklessly allowed his load of boards to come into contact with the car: and in neither case can he recover. In the absence of his statement that he had looked, the presumption is that he had not; for, if he had, his hand, instantly directed by the instinct of self-preservation, would have guided his horse from the approaching car, instead of into it. Remembering his own statement, "If I had seen it, I would not have been here now, I guess," and turning to the testimony of three witnesses called by the appellant, uncontradicted and undenied, this presumption becomes conclusive. James Hinchliffe testified as follows: "Q. Did you notice which way the driver of the cart was looking? A. He was looking the opposite way. He was turned around when he was struck. Q. That is, when you say the opposite way, do you mean he was looking towards the car or towards Union avenue or back of him or to the side of him, or how? A. He was looking to the south side. Q. That is back towards the lumber yard? A. Yes, sir; towards the lumber yard." Andrew Rhoades said: "Q. State in your own way what you saw of the accident. A. I had a child next to me, and I sat with my arm on the window, looking out the front of the car. I didn't see the cart come out of the lumber yard. It was on the pike when I saw it, and I should judge the lumber was four or five feet clear of the car, anyhow, and he was driving along, and something seemed to attract his attention, and the horse came on, and he turned around that way to look (indicating), and as he turned his head the horse made three or four steps towards the track, and

that threw the lumber right into the car. . . . Q. (On cross-examination) : And you say the man looked aside ? A. The man looked back like that." And Edward Grey Allen, who saw the whole occurrence, makes this clear statement: " Q. Just state the facts. A. He slackened up but didn't stop, and I saw a cart come out of the lumber yard and clear the road. We were running slowly then. I don't think there was any power on ; the bell was ringing, and he had his foot on the bell tapping it, and we ran along, as I say, without power. I saw that after a while something seemed to attract Mr. Morrow's attention and he kept looking back. I saw that the horse had in some way swerved towards the track, and, in the position I was in, I saw the lumber would strike the car, and just about strike my head, and the motorman was still ringing, and, as I say, had his hand on the motor and on the brake. And finally I saw that the accident was going to happen, and I tapped on the window, and hallooed, and then the crash came."

The duty of the appellee, driving along the pike on the cart, loaded with lumber placed crosswise on it and projecting in front of it up to the head of the horse, and with the trolley track to the right of him, over which a car might come at any moment, was to look forward, and not backward, and to keep in the road, wide enough to do so, at a safe distance from the track. This he did not do, and that McIntire, who was driving up behind him, passed him to the left, will not excuse his disregard of his duty. He was ahead of McIntire, and had a right to remain in front of him in the middle of the pike, or at a safe distance from the trolley track, and his duty to look ahead continued. McIntire passed, or tried to pass, at his own peril, and, if Morrow turned his attention to the former, instead of directing it to his own progress on the road to avoid the dangers ahead of him, he became careless, and his carelessness was negligence, which, in itself, is in the way of his right to recover.

The material facts in this case are not in dispute, and, in the face of them, there is no relief for the unfortunate appellee. He drove out of the lumber yard to the pike, and there turned homeward, on a road amply wide enough to allow him to pass on without danger of colliding with a trolley car coming on the track along the extreme right of the road. Instead of driv-

ing with ordinary care over the road, manifestly safe for him, even with his unusual load, after having started and gone on for some distance away from the railway track and its incident dangers, he allowed his horse to wander from the path of safety and to bring him and his load into collision with the car. Our atttention has been properly called to Ehrisman v. East Harrisburg City Pass. Ry. Co., 150 Pa. 180, Thomas v. Citizens' Pass. Ry. Co., 132 Pa. 504, Boehmer v. The Pittsburg, etc., Traction Co., 194 Pa. 313, Patton v. Philadelphia Traction Co., 132 Pa. 76, Warner v. Peoples' St. Railway Co., 141 Pa. 615, and Smith v. Electric Traction Co., 187 Pa. 110. In no one of these cases was the carelessness of the plaintiff clearer than that of this appellee, and, without their aid to us as authority, our duty would be plain to declare that contributory negligence bars the right to recover in this action. No authority brought to our attention by the learned counsel for the appellee can sustain the contention that he ought to recover.

No negligence was proven on the part of the defendant. Demonstration of this is not needed, in view of what we have said as to the conduct of the appellee. The assignments of error are sustained, the judgment of the court below is reversed and is now entered for the defendant.