HANNAH M. GLEASON, administratrix, *vs.* WORCESTER CONSOLIDATED STREET RAILWAY COMPANY.

Worcester.    September 29, 1903. — October 21, 1903.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Negligence*, Contributory.

If a person engaged in operating a stationary engine, used in constructing a sewer in a street, two feet from the track of an electric railway, steps upon the track directly in front of an approaching car eight or ten feet away, and is struck and killed by the car without regaining consciousness, no recovery can be had for his death without affirmative proof that he was exercising care to avoid being struck by the car.

TORT for the death of the plaintiff's intestate from being run over by a car of the defendant. Writ dated December 18, 1901.

At the trial in the Superior Court *Sheldon*, J. at the close of the plaintiff's evidence ordered a verdict for the defendant. The plaintiff alleged exceptions.

*H. L. Parker, Jr.*, for the plaintiff.

*C. C. Milton*, ( *C. Bullock* with him,) for the defendant.

BARKER, J.    The action is for damages for causing the death of the plaintiff's intestate who was struck and killed by one of the defendant's cars. As he was not a passenger, even if the defendant was guilty of negligence, or the defendant's servants were guilty of gross negligence in causing the death, the plaintiff cannot recover without affirmative evidence sufficient to justify a finding that her intestate was in the exercise of ordinary care.

If from the evidence the inference that he exercised ordinary care can be only conjectural the question ought not to be submitted to a jury. *Creamer* v. *West End Street Railway*, 156 Mass. 320. *Mathes* v. *Lowell, Lawrence, & Haverhill Street Railway*, 177 Mass. 416. *Cox* v. *South Shore & Boston Street Railway*, 182 Mass. 497, 499, and cases cited.

The plaintiff's intestate was employed in operating a stationary engine and air compressor used in constructing a sewer in the street. The sewer trench was parallel with the defendant's tracks and between them and the sidewalk, and the sides of the trench were sustained by sheathing which came above the surface of the street. The edge of the trench was about two feet from the nearest track. The engine and compressor were at the northerly end of the trench, and the place where the plaintiff's intestate stood when operating them was about two feet from the nearest rail of the nearest track. Northerly of the boiler of the apparatus was a shield of boards two or three feet square to catch any oil flying from the compressor, and this shield was nearly parallel with the track and about eighteen inches from the rail, and between the edge of the shield and the boiler was just room for passage. The plaintiff's intestate could not reach the other side of the compressor nearest the sidewalk except by going out on to the street and going round the end of the compressor.

The occupation of the plaintiff's intestate confined him substantially to a single spot in which he stood with his face toward the north and it was necessary for him to have his hand on the throttle a good part of the time in order to control his engine. It was sometimes necessary to oil certain parts of the apparatus, but he was not engaged in oiling at the time, and there was nothing shown that would call him away from his engine, and no evidence that anything about his work required him to go between the rails of the track. Just before the accident he had gone around the boiler and had some talk with the fireman after which they both turned to their work. While they were talking the plaintiff's intestate was looking southerly down the track toward the car which afterwards struck him and which the fireman testified that he (the fireman) saw about three hundred feet away as he turned to his work. The

fireman had just turned to his work and had only time to move a valve when the car flew by and struck the plaintiff's intestate who had stepped out upon the track at a point just opposite the wooden shield. The car knocked him down and carried his body under the wheels and fender sixty feet up the track, which was upon an up grade of five per cent. There was conflicting evidence as to the rate of speed, and the evidence would have justified a finding that the rate was anywhere from four to fifteen miles an hour. The plaintiff's intestate was unconscious until his death. Besides the testimony of the fireman, there was that of the motorman of the car, and also that of a traveller on the street, who testified that he was driving northerly, that the plaintiff's intestate was standing beside his engine, and then when the car was eight or ten feet away stepped out upon the track and turned north and that he had just stepped upon the track when the car was upon him, and that he turned half round to the right and put his hand up in front of the car.

The motorman testified that he saw a man step on to the track from behind the engine about eight feet in front of the car. The fireman testified that the car was going eight or nine miles an hour, the motorman that it was going four or five miles an hour and that he was ringing his gong all the time, and that as soon as he saw the man he shut off the power, turned on the whole reverse power and put on the full force of the emergency air brake. The traveller testified that the car was going fifteen miles an hour, and that he heard the gong when the car was at Kendall Street three hundred feet away. Twenty minutes after the accident the fireman found the throttle of the compressor wide open, although he never knew the plaintiff's intestate to leave his work unless he shut down his engine before.

To step from a place of safety only two feet away upon the track of an electric street railway directly in front of and only eight or ten feet from an approaching electric car, whether the car is approaching at the rate of four, or five, or eight or nine miles, or fifteen miles an hour is not evidence of care on the part of the person who does the act. It may or may not be consistent with ordinary care. If the person who does it is struck by the car and killed no recovery can be had for his death without affirmative proof that he was exercising care to avoid being hit.

Assuming from the fact that the plaintiff's intestate left his engine without shutting it down, that he had occasion to pass in the street around the shield to the other end of the compressor, he knew that a car might at any time come up the street behind him and that if he placed himself within the space it would cover he might be hit unless he got out of the way.   If we also assume, as the plaintiff contends could be inferred fairly, that he had just seen the approaching car as he was looking towards it while talking with the fireman, he had had actual knowledge that a car was then approaching.   His conduct in stepping on to the track within eight or ten feet of the car is as consistent with the theory that he had not seen the car and went upon the track without taking any care to avoid being hit, or that he had forgotten that it was approaching and so took no care or precaution, as with the theory that he had the danger in mind, and thought that he had time to enter upon the track and still get out of the way of the car.   Either inference is purely conjectural.   In our opinion the verdict for the defendant was ordered rightly because there was no sufficient or affirmative evidence that the plaintiff's intestate exercised care.   See *Kelly* v. *Wakefield & Stoneham Street Railway*, 175 Mass. 331; *Hurley* v. *West End Street Railway*, 180 Mass. 370.

This view makes it immaterial whether the evidence offered by the plaintiff and excluded, to show negligence on the part of the defendant was excluded rightly.

*Exceptions overruled.*