MERTZ *v.* DETROIT ELECTRIC RAILWAY.

1. STREET RAILWAYS — LOADED WAGON—COLLISION—NEGLIGENCE —QUESTION FOR JURY.

Plaintiff, who was driving on a street-car track with a heavily-loaded wagon because of the muddy condition of the street, was run into by a car going in the same direction. There was testimony that the wagon could be seen three or four blocks away. The motorman testified that he was running full speed, and that on account of falling snow he did not see the wagon until within 75 to 100 feet, when it was impossible to prevent a collision. *Held*, that the direction of a verdict for defendant was properly refused, since the question of defendant's negligence was for the jury.

2. SAME—DUTY OF MOTORMAN—OBSTRUCTIONS—STOPPING CAR.

Where an electric car collided with a heavily-loaded wagon which plaintiff was driving on the track because of the muddy condition of the street, an instruction that "the cars of the defendant company have the right of way on its tracks, and the motorman had the right to assume that no horse and vehicle would be on the right of way, and to operate his car under that assumption, and to propel the car at the rate allowed by law, 15 miles an hour," was properly refused, since defendant did not have the exclusive right of way, and it was the duty of the motorman to keep a lookout, and to stop when it became apparent that a vehicle on the track could not be removed in time to prevent a collision.

3. SAME—DUTY OF DRIVER—CONTRIBUTORY NEGLIGENCE.

Where an electric car collided with a heavily-loaded wagon which plaintiff was driving in the same direction, and plaintiff testified that he saw the car approaching five or six blocks away, the question whether he was guilty of contributory negligence in not going back to signal the car to stop was properly submitted to the jury.

4. SAME—SPEED OF CAR—WITNESSES—COMPETENCY.

    Witnesses who have been accustomed to observe electric cars in motion are competent to express an opinion as to the speed of a car on the occasion of an accident.

Error to Wayne; Hosmer, J. Submitted October 2, 1900. Decided October 31, 1900.

Case by Jacob G. Mertz and John H. Heppner, copartners as Mertz & Heppner, against the Detroit Electric Railway, for damages caused by a collision with a trolley car. From a judgment for plaintiffs, defendant brings error. Affirmed.

*Thomas T. Leete, Jr.,* for appellant.

*Hayes & Lawson,* for appellees.

MONTGOMERY, C. J. Plaintiff Heppner, who is in the coal and wood business, started at nightfall on the 4th of March, 1899, to deliver a load of coal from his place of business to a customer named Baudie, who lived at the corner of Oakland avenue and Belmont street, Detroit. He drove out Woodward avenue to Westminster avenue, thence east on Westminster avenue to Oakland avenue, and thence north on Oakland avenue to go to Mr. Baudie's house, which was about five or six blocks north of Westminster. Defendant's cars are operated on Oakland avenue upon a double track. The street is unpaved, and at this season of the year was very muddy. Plaintiff drove between the tracks on Oakland avenue, the wheels upon one side of his wagon being between the rails of the right-hand track and the wheels upon the other side between the two tracks. He did this because he had been told that that was the best route to travel. It was about 7 o'clock in the evening. It had started to snow, and the snow was coming down from the north. There was testimony showing that the plaintiff's horse and cart could be seen for a distance of three or four blocks. The plaintiff continued driving upon the tracks for several blocks.

The roads pulled hard, and he had to rest his horse every little while. He testified that he had been on the track 15 or 20 minutes before a car appeared. He claimed that he did not leave the track when he saw the car coming, because it was difficult to do so, the wagon having settled into the mud, and the track being two or three inches higher than the ground. He saw the car approaching him when it was five or six blocks away. He testified:

"I had gone a. little over two blocks on Oakland avenue when I saw the car come in sight, and then I had two or three blocks more to go to get to Belmont avenue. I kept on going up Oakland avenue after the car was in my rear, going in the same direction. * * * I kept looking back to see the car coming, and I kept on driving on the track all along. * * *

"Q. Why didn't you signal? Why didn't you go back to signal?

"A. I did not think it was necessary, because I thought they could see me as well as I could see them. I never gave it a thought to go back to signal."

When the car was about 30 or 40 feet away, the plaintiff started to yell, and wave his hand at the motorman. The motorman testified that it was a very dark night, and that he was standing close up to the window of the vestibule, keeping a sharp lookout; that the snow was coming down and melting upon the window pane; that the car had a head-light, which threw a light down the track; that he had been looking out ahead all the time, and saw the wagon first when it was from 75 to 100 feet down the track; that he immediately reversed the controller, and the fuse wire burned out; that he caught hold of the brake, and did his utmost to stop the car, but that the little snow on the track made it bad for the wheels, causing them to slide, and that he could not stop the car until it struck the wagon; that, if the wagon box had been higher, it would have passed over the deadwood of the car, and broken into the vestibule, and probably have caused serious, if not fatal, injury to himself. The motor-

man and conductor both testified that the car was running about 10 miles an hour, and that as good a stop was made as was possible under the circumstances. The motorman also testified that he was running on six points —what they call full speed—just before he saw the wagon.

Plaintiffs recovered a judgment against the defendant of $100, and defendant has appealed therefrom to this court.

It is contended that, upon this state of facts, a verdict should have been directed, because no negligence on the part of defendant was shown, and also because the evidence shows the plaintiff Heppner to have been negligent. There was ample evidence to justify the submission of the question of defendant's negligence to the jury. It appears that the motorman was familiar with the street. Presumptively he knew something of the difficulty the plaintiff would have in turning off the track; and there was evidence to justify a finding that he might have seen the wagon, if he had looked ahead, three blocks away, and that he approached to within 50 or 75 feet of the wagon at full speed, and without before seeing it, as he says. In the face of evidence that it was necessarily discernible for three blocks, the jury were not bound to give unquestioning credence to his statement that he first saw the wagon so near the point of collision. Defendant's view of the law defining the motorman's duty was apparently expressed in the fourth request to charge, as follows:

" The cars of the defendant company have the right of way upon its tracks, and defendant's motorman had the right to assume that any horse and vehicle would not be upon the right of way, and had the right to operate his car under the assumption that the right of way would be clear, and to propel the car at the rate allowed by law of 15 miles an hour."

This request does not correctly state the law. The defendant company does not have the exclusive right of way over the part of the street in which its track is laid.

The drivers of ordinary vehicles are in no sense trespassers upon the track, and one in charge of a street car is bound to know this.   The duties of a driver of a wagon on the track and a motorman are, in some sense, reciprocal.   The duty of the latter, at the very least, is to keep a lookout ahead; and, when it becomes apparent that the track is occupied by a vehicle which cannot be gotten off in time to avert a collision, it is his duty to bring the car to a stop.   *La Pontney* v. *Cartage Co.*, 116 Mich. 515 (74 N. W. 712); *Rascher* v. *Railway Co.*, 90 Mich. 415 (51 N. W. 463, 30 Am. St. Rep. 447); *Bush* v. *Railway Co.*, 113 Mich. 513 (71 N. W. 851).

The contention that the plaintiff Heppner was guilty of contributory negligence was based largely upon the case of *Frost* v. *Railway Co.*, 96 Mich. 470 (56 N. W. 19), and it is said in defendant's supplemental brief that, unless this court shall declare that case not good law, it should be held that the present plaintiffs are not entitled to recover.   We do not agree with this view of counsel.   The distinction between steam railways and street railways has been often pointed out.   It is a fact that must be assumed to be within the knowledge of all persons *sui juris* that a steam-railway train cannot be brought under control within a short distance, while it is equally known that street cars in cities can be kept within control sufficiently to prevent collision with vehicles lawfully on the track.   *Rascher* v. *Railway Co., supra; Mahoney* v. *Railway Co.*, 110 Cal. 471 (42 Pac. 968); *Calumet, etc., R. Co.* v. *Lynholm*, 70 Ill. App. 371; *Bush* v. *Railway Co.*, 113 Mich. 513 (71 N. W. 851).

Counsel also cites, in support of the contention, *Daly* v. *Railway Co.*, 105 Mich. 193 (63 N. W. 73), *Lyons* v. *Railway Co.*, 115 Mich. 114 (73 N. W. 139), and *Graf* v. *Railway Co.*, 94 Mich. 579 (54 N. W. 388), all of which were cases of pedestrians, who could, so far as appeared to the one in charge of the motor or engine, avoid a collision by simply stepping aside.   Neither of these cases is an authority to support the proposition

that a motorman who sees a wagon stalled on the track ahead of him, or traveling the track in the same direction, may proceed in anticipation that the traveler ahead of him will get out of the way. Much less can he do so when aware of the fact that the driver of a wagon would have a peculiar difficulty in turning out, owing to the un-wrought condition of the road.

Whether the plaintiff was guilty of contributory negligence in not going back to warn the motorman is, under the circumstances of this case, a question for the jury. The plaintiff testified that he thought the motorman could see him as well as he could see the car, and the jury might well have found that, with the car under proper control, the motorman could have come to a stop after seeing the plaintiff's situation, and that the plaintiff was justified in assuming that he would.

Error is assigned on rulings permitting the witnesses for plaintiffs to testify as to the speed at which the car was going. We think each of the witnesses gave evidence showing sufficient experience in observing the speed of cars in motion to entitle him to express an opinion, within the ruling in *Detroit, etc., R. Co.* v. *Van Steinburg*, 17 Mich. 104; *Guggenheim* v. *Railway Co.*, 66 Mich. 155 (33 N. W. 161).

We discover no prejudicial error. Judgment affirmed.

The other Justices concurred.