BERNARD W. MATHES, administrator, *vs.* LOWELL, LAWRENCE, AND HAVERHILL STREET RAILWAY.

Essex.     November 7, 1900. — January 4, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

In an action against a street railway company to recover damages for the death of the plaintiff's intestate, it appeared that the deceased was killed by an electric car while crossing a street. There was evidence that the car was in plain sight, when the deceased left the sidewalk to cross the street, and was approaching at the rate of from fifteen to eighteen miles an hour; that the deceased was seen upon the sidewalk and then either running or walking very fast across the street and was next seen when struck by the car. *Held,* that there was no affirmative evidence of due care on the part of the plaintiff's intestate and that a verdict rightly was ordered for the defendant.

TORT, brought by the administrator of Lizzie A. Mathes to recover damages for the death of and for personal injuries suffered by his intestate, from being struck by an electric car owned and operated by the defendant. Writ dated May 26, 1899.

At the trial in the Superior Court, before *Bishop,* J., it appeared that the accident happened upon Washington Street, in

Haverhill, from the plaintiff's intestate being struck by one of the defendant's electric cars while she was crossing Washington Street, on a crossing from the northwesterly corner of Freeman Street and Washington Street, to the southerly side of Washington Street, and while the car was proceeding on the track in a westerly direction; that the crossing was composed of flagstones; that Washington Street runs nearly east and west and that Freeman Street runs north and south beginning at the northerly side of Washington Street; that Ford Street begins at the southerly side of Washington Street one hundred and twenty-five feet east of Freeman Street, and that Shepard Street also begins at the southerly side of Washington Street two hundred and sixty feet east of Ford Street; that the width of Washington Street is about forty feet, taking the distance from the curbing on the northerly side of Washington Street to the line of the sidewalk upon the southerly side.

The following is copied from a plan annexed to the bill of exceptions:

It also appeared that the accident happened on February 8, 1898, at about half past nine o'clock in the morning, and that the intestate lived about two hours after being struck by the car, and was conscious a greater part of the time; that it was a bright, clear, frosty day; that a few days before there had been a heavy fall of snow, and that the surface of the street was covered with snow; that the snow had been partially removed from that part of the street which lay northerly of the street railway track, but was still very deep and lay in piles close to the track, upon the southerly side of Washington Street; that the surface of the snow on both sides of the track was above

the track and slanting away from each rail, a condition caused by cars throwing out the snow as they were forced along the rail when running.

One Ford, a witness called by the plaintiff, testified that on the morning of the accident he was exercising a horse of which he had charge upon Washington Street, and was travelling in the direction the car was going; that the car which struck the deceased passed him between Shepard Street and Ford Street, near Shepard Street; that at that moment he saw the deceased upon the sidewalk at the corner of Freeman Street and Washington Street; that he next saw her under the car; that the gong on the car was rung for the first time pretty close to Freeman Street crossing; and that the car was going when it passed him at the rate of fifteen miles an hour.

On cross-examination, he testified that the car was running at its ordinary rate of speed, and that the car usually ran at a very high rate of speed in that locality; that his attention was first attracted by the rumbling noise of the car, and that he looked around and saw it coming; that just before he reached Ford Street he saw the deceased standing on the corner of Freeman and Washington Streets, a little more than one hundred feet away; and that there was an unobstructed view for that distance.

One Cook, a witness called for the plaintiff, testified that she was fifteen years old; that she was going to school on the morning of the accident; that as she was coming down on the west side of Freeman Street she saw the deceased standing on the corner of Freeman and Washington Streets, by the church, and about one hundred feet away; that after the attention of the witness was called to the deceased by the gong, the latter was looking up the street toward the car when she first noticed her; that she saw her when she was struck by the car; that she was struck on the northerly side of the track; and that the car when she first saw it was abreast of Ford Street.

On cross-examination, she testified that her attention was first attracted to the car by the ringing of the gong; that the car was then abreast of Ford Street or a little west of it; that when the car struck the deceased she was two or three feet west of the crossing; that the car was about twenty feet from the deceased when she started to run across the street, at a guess;

that the gong was rung all the way from Ford Street and rung repeatedly just before the car reached the crossing; that the car was going at the ordinary rate of speed; that the deceased, when she first saw her, was on the crossing just off the curbstone; that when the deceased started she went very rapidly, and that she ran diagonally across the crossing and towards the west as though to get around the car; and that she was struck a very short distance west of the crossing — about two or three feet. She also testified that the car was going at its ordinary rate of speed.

One Brown, a witness for the plaintiff, testified that he was acquainted with the deceased and saw her when she stood on the crossing of Freeman and Washington Streets; that he saw her start to walk across the street; that she was struck by the car when very near the centre of the track; that she was walking while she was on the street; and that he did not hear the gong on the car rung at all.

On cross-examination, he testified that it looked to him as if the car was twenty-five or thirty feet away from the deceased when she started to go across the street; that when he first saw the car it was midway between Ford and Shepard Streets; that the deceased walked straight across the street; that he did not think she was running, but she walked very fast; that when she left the curbstone she was walking at a very brisk pace; and that the morning was bright and clear, and he noticed no obstructions between the deceased and the car.

One Davis, a witness for the plaintiff, testified that she lived on Washington Street, opposite Freeman Street; that she heard the gong rung on the car very rapidly, and looked around and saw the car strike the deceased just as she looked around; that the car was going about eighteen miles an hour; that she had always kept and driven horses.

On cross-examination, the witness testified that she did not see the deceased before she reached the crossing, or as she came on the track; that she heard the gong sounded repeatedly and continuously for a number of minutes.

One Meehan, a witness for the plaintiff, testified that he was on Washington Street at the time of the accident, about fifty yards west from Freeman Street crossing; that his attention

was first attracted by hearing the gong rung, and that the next thing he saw the deceased was " swaying back and forth, as though trying to get one way or the other when the car struck her."

On cross-examination, he testified that his attention was first attracted by the ringing of the gong, and that he had not seen the deceased before he heard the gong ; that it looked to him as if the deceased was trying to get off the track one way or the other, and as if she was doubtful as to whether she should go forward or back.

At the conclusion of the plaintiff's evidence the defendant asked the presiding judge to rule that the plaintiff was not entitled to recover.

The judge ruled as requested, and directed the jury to return a verdict for the defendant. The plaintiff alleged exceptions.

The case was argued at the bar in November, 1900, and afterwards was submitted on briefs to all the justices.

*H. J. Cole,* (*W. S. Peters* with him,) for the plaintiff.

*J. P. Sweeney,* for the defendant.

BARKER, J. The verdict for the defendant was ordered rightly, because there was no evidence from which it could be found that the plaintiff's intestate was in the exercise of ordinary care.

A foot traveller whose course is across the tracks of a street railway must exercise care to avoid being hurt by the cars and if he is struck by a car and injured or killed there can be no recovery in a suit against the railway company for damages unless the plaintiff shows by affirmative evidence that the traveller was in the exercise of due diligence to avoid injury. And, further, when the whole evidence has no tendency to show care on the part of the traveller, but on the contrary shows that he was careless, it is the duty of the court to direct a verdict for the defendant. *Creamer* v. *West End Street Railway,* 156 Mass. 320, and cases cited. See also *Benjamin* v. *Holyoke Street Railway,* 160 Mass. 3 ; *Robbins* v. *Springfield Street Railway,* 165 Mass. 30, 37 ; *Kelly* v. *Wakefield & Stoneham Street Railway,* 175 Mass. 331, 333.

The evidence tended to show that the plaintiff's intestate, a woman, was struck by the car as she was attempting to cross

the street in the centre of which was the car track.   The width
of the street between the sidewalks was forty feet, and that of
the track four feet eight and one half inches.   In attempting to
cross the street the deceased was walking from the northerly
curbstone toward the south, the street running east and west
and the car going from east to west.   From the northerly curb
to the northerly rail of the track the distance was seventeen
and one half feet.   The accident happened in the forenoon of a
clear, bright winter morning.   A few days before there had
been a heavy fall of snow, and the surface of the street was
covered with snow.   It had been removed partially from the
part of the street northerly of the car track, but was still very
deep and lay in piles close to the track upon its southerly side,
and on each side of the track the surface of the snow was above
the rails and slanting away from each rail.   Another street
joined the one in which was the car track, at right angles, from
the north, and a cross walk of flag stones led from the sidewalk
at the easterly corner made by the joining of these two streets
across the street in which was the track.   Five of the witnesses
called testified that they saw the accident.   Of these witnesses
two did not see the deceased until she was in collision with the
car or nearly so, but each of the other three testified to seeing
her upon the sidewalk at the corner of the two streets.   The
first of these witnesses after seeing the deceased upon the side-
walk at the corner next saw her under the car.   The next wit-
ness, a school girl of fifteen, testified that she saw the deceased
standing on the corner looking up the street toward the car, the
attention of the witness being called to the deceased by the
gong of the car.   She also testified that when she first saw
the deceased the latter was on the crossing just off the curb-
stone, and that when the deceased started from the sidewalk
she ran diagonally across the street and was two or three feet
west of the cross walk when the car struck her, and that she
ran diagonally as though to get around the car.   The third wit-
ness testified that he saw the deceased when she stood on the
crossing, and that he saw her start to walk across the street, and
that she was struck when very near the centre of the track;
that he did not think she was running but she walked very fast,
and when she left the curbstone was walking at a very brisk

pace.  The fourth witness did not see the deceased before she reached the crossing or as she came on the track, but heard the gong on the car struck very rapidly and looked around and saw the car strike the deceased just as the witness looked around. The attention of the fifth witness was first attracted by hearing the gong, and the next thing this witness saw was the deceased swaying back and forth when the car struck her, as though she was trying to get off the track one way or the other and was doubtful whether she should go forward or back.

Upon the evidence the approaching car was in plain sight from the corner where the deceased left the sidewalk to cross the street.  It was approaching at the rate of from fifteen to eighteen miles an hour, which was its ordinary rate of speed, and although óne of the witnesses testified that he did not remember hearing the gong, there can be no contention that it was not sounded.

One reasonable inference from the evidence is that the deceased left a place of safety upon the sidewalk in order to hurry across the street before the car should reach the crossing, and knowing that it would be necessary to hurry if she expected to avoid being struck by the car.  But even if this is not the only reasonable conclusion, there is on the evidence no ground for an inference that the deceased exercised' care to avoid danger.  As such care could not be found the verdict for the defendant was ordered rightly.

*Exceptions overruled.*