# CAPITAL TRACTION COMPANY *v.* CRUMP.

---

APPEAL AND ERROR; BILL OF EXCEPTIONS; WITNESSES; STREET RAILWAYS; NEGLIGENCE; INSTRUCTIONS TO JURY; OBJECTIONS AND EXCEPTIONS; AUTOMOBILES.

1. Where the recital of the evidence in a bill of exceptions consisted in great part of questions to and answers by witnessses as stenographically reported at the trial, this court suggested that it was in violation of rule 5 of the court, and cited *District of Columbia* v. *Frazer*, 21 App. D. C. 154; but as no motion to strike out was made by the appellee, the appeal was entertained, with the statement, however, that the rule would thereafter be more strictly observed.

2. That the trial court asked a witness if he had been drinking, and then allowed counsel to cross-examine the witness on the subject, will not be held to be prejudicial error, where the testimony of the witness had been contradictory and his statements confused, and in settling the bill of exceptions the trial court stated that when the court asked the question the court was of the opinion that the witness had not only been drinking, but was plainly intoxicated. (Distinguishing *Ruppert* v. *Wolf*, 4 App. D. C. 556.)

3. A street railway company has a preferential, but not an exclusive, right to the use of the parts of a public street occupied by its tracks. (Following *Capital Traction Co.* v. *Apple*, 34 App. D. C. 559.)

4. Though one may be in peril through his own negligence, another who perceives that peril is bound to exercise ordinary care to prevent doing him an injury. (Following *Capital Traction Co.* v. *Divver*, 33 App. D. C. 332, and *Capital Traction Co.* v. *Apple*, supra.)

5. It is not error for the trial court to refuse an instruction asked by the defendant, a street railway company, in a personal injury suit, to the effect that if its motorman wilfully ran down plaintiff's automobile the plaintiff cannot recover, where the evidence does not indicate a wilful, intentional injury by the motorman.

6. An objection by the defendant in a suit resulting from a collision between the defendant's street railway car and the plaintiff's automobile, to an instruction asked by the plaintiff to the effect that the burden of proving plaintiff's contributory negligence is upon the defendant, is not tenable when based not upon the ground that a plaintiff's contributory negligence may appear from his own evidence, on which point the defendant asks no instruction, but upon the ground that the prayer fails to refer to the defendant's claim of concurrent negligence on the part of the plaintiff, where the court in other instructions tells the jury that if they find that the act of the plaintiff caused the collision they should find for the defendant.

7. While it is the duty of everyone under ordinary circumstances to use his eyes and ears amid conditions of danger, the failure to look and listen before entering upon a street car track does not constitute negligence as matter of law (following *Capital Traction Co.* v. *Apple*, supra) ; but negligence in this respect depends upon the circumstances of the particular case, and is for the determination of the jury. (Mr. Justice Van Orsdel dissenting.)

8. It is not negligence in law for the driver of an automobile having a top or hood, to fail to look back or anticipate the approach from the rear of a street railway car, while driving his automobile on the railway tracks in a city street. While he is chargeable with a greater degree of care, under such circumstances, than ordinarily,

he is not charged with the duty of keeping a lookout to the **rear** to the exclusion of his duty to look ahead. The duty to look ahead is paramount.

9. It is not error for the trial court to refuse to direct a verdict for the defendant, a street railway company, in an action for damages by the owner of an automobile, who was injured and whose car was wrecked by its being run into from the rear by one of the defendant's cars, where the plaintiff's evidence showed that the motor car was being driven by the plaintiff on the defendant's tracks in a city street, to avoid a coal wagon, that the plaintiff did not look behind at any time, but depended on the sound of the gong of any approaching street car, and that the motorman of the colliding street car sounded his gong very shortly before the collision occurred.

No. 2087. Submitted February 18, 1910. Decided May 10, 1910.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages for personal injuries, and also for injuries to personal property. *Affirmed.*

The COURT in the opinion stated the facts as follows:

This action was brought by Bettie B. Crump against the Capital Traction Company to recover damages for personal injuries, and the destruction of an automobile, occasioned by collision with a car of defendant in Seventh street, on May 7, 1907.

The defendant has two tracks along the middle of Seventh street. The clear space between the outside rail of the eastern track, on which northbound cars run, and the curbstone is 16 feet.

Plaintiff's evidence tended to show that she had bought a new electric automobile on May 6th, and had had several days' practice in operating it. She had owned and operated a gasoline machine, which had a similar guiding wheel, and needed no instruction in guiding the new one. She was learning the peculiarities of the new power. The machine was kept in the garage of the dealer from whom she bought it. On the morn-

ing of May 7th an employee of the seller brought the machine to plaintiff's apartment, in Columbia road, and they drove around the park. She guided the machine, and they came down to a bank at Seventh street and New York avenue. Starting home from there, they drove north in Seventh street. ˙ On account of occasional wagons being in the street between the eastern track and the curb, she drove most of the way along near, and sometimes over the rail. Most of the way the course was pretty near the track. It began to rain, and the leather top or hood of the machine was raised. Between S and T streets she had to pass a coal wagon, which was near the curb, and to do so she had to turn towards the track. She heard the gong sound behind her, and speedily thereafter the car coming behind her struck the hind wheel of the machine, and threw it against the coal wagon, from which it rebounded, striking the car again. The machine was completely wrecked. Plaintiff sustained severe injuries from which she had not recovered at the time of the trial, and which put her to considerable expense. On cross-examination she said she did not look behind her at any time; depended on the sound of the gong; expected to hear it ring if a car approached; very shortly after hearing the bell the crash occurred. The man riding with plaintiff testified substantially to the same effect. The appearance of the machine after the accident indicated, according to witnesses, that it had been struck on the hind wheel. The photographs of the wreck seem to support this view. There was other evidence tending to corroborate plaintiff in substantial particulars, and also that no gong was sounded until just before the collision.

The motorman testified for the defendant, that he saw the machine ahead of him, and caught up with it north of S street. Rang the gong to give warning. The machine pulled off the track about five feet. Car went on past, got by with the front of the motor, and was passing a coal wagon that was near the curb. About the time he passed heard a crash, and stopped in about the train length. The machine had run into the car, striking about two thirds of the way back on the motor car. Was 25 or 30 feet behind the machine, when first began to ring

the bell. Rang continuously until he got up and was passing. When he first saw coal wagon it was north and the car was south of S street. Machine was then near car track. Distance between it and the car unknown at that time. As the cart was only 2 feet from curb did not expect machine to go around it on the right. Knew it would have to pass to the left. Car was going faster than the machine, and was bound to catch up with it. It would have to get close to the track to pass the cart. He thought it was far enough in rear of cart so that he could get by before it would pass the cart. It pulled over against the car, which was running at its full usual speed. Some other evidence for defendant tended to show that the machine was running "zig-zag,"—sometimes near, and sometimes on the track; that the car was passing the machine, and the latter ran into it; that plaintiff attempted to run between the cart and the car and ran into the trailer; that she tried to turn in front of the car and hit the end of it. Some witnesses heard continual ringing of the car gong; others none until just before the crash.

The court refused a request by the defendant to direct a verdict, and submitted the case to the jury, who returned a verdict for the plaintiff, assessing her damages at $3,500. From the judgment thereon, defendant has appealed.

*Mr. R. Ross Perry, Mr. R. Ross Perry, Jr.,* and *Mr. G. Thomas Dunlop* for the appellant.

*Mr. Henry H. Glassie* and *Mr. Charles J. Murphy* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The recital of the evidence in the bill of exceptions consists in great part of questions to and answers by witnesses as recorded by the stenographer on the trial. This too common practice is in opposition to rule 5. We have heretofore called

attention to this practice, and suggested that the court would exercise its power to disregard a bill of exceptions not in conformity with the rule. *District of Columbia* v. *Frazer,* 21 App. D. C. 154–160.

No motion to strike out has been made, and the bill will be entertained. The rule will be hereafter more strictly observed. Sometimes there are conditions which render question and answer important to the elucidation of a particular circumstance, or the appraisal of the value of a particular witness. Their recital would not then be in violation of the rule, but care should be taken not to go beyond the exceptions stated. We have stated the evidence sufficiently to show the bearing of the instructions given to the jury on one hand, and refusal on the other, on which errors have been assigned. These are thirty-three in number, but they can be considered under a few propositions.

2. The first assignment of error is on an exception taken to a question asked by the court of the defendant's witness, Jim Ridgeley. The testimony of this witness occupies considerable space. He varied in some particulars from all of the other witnesses, and his statements were in some respects confused. Several questions were asked him by the presiding justice, in answering which he addressed the latter as "Captain." The justice then asked: "Have you been drinking?" Counsel for the plaintiff then made inquiries as to his drinking during the day, to each of which he answered no. Defendant's counsel then moved to strike out questions and answers, including the question propounded by the court. The motion was overruled. In settling the bill the court stated that, when the question was asked, the court was of the opinion that the witness "had not only been drinking, but was plainly intoxicated." We see nothing in this recital showing an excess of the latitude that may be indulged in the examination of witnesses and the preservation of decorum, much less anything clearly prejudicial to the defendant. The conditions are very different from those shown in the case of *Ruppert* v. *Wolf,* 4 App. D. C. 556, on which appellant relied.

3. The next assignment of error is on the giving of the following instruction to the jury at the request of the plaintiff:

"The jury are instructed that the whole of Seventh street, from curb to curb, is a public highway, and that the permission given to the Capital Traction Company to lay rails and to run cars thereon does not take away from the portion of the street so used the character of a public highway, or give the company an exclusive right to the use of such portion of the street; but that the public using other vehicles may use the space beside the rails and between the rails and the rails themselves whenever the necessities of traffic so require, and when they are not occupied by a car of such company passing or about to pass; and that, with the exception that such cars, since they cannot, like other vehicles, pass around vehicles in front of them, and therefore must give timely notice of their approach to vehicles in their way in order that such vehicles may get out of their way, such cars are subject to the same requirements as other vehicles, and stand on a footing of equality with them, in respect to using due care to avoid collision."

In reading this to the jury the court added the following, among other things.

"In other words, gentlemen, if in this street the conditions of traffic are such at any given time that it became necessary for the plaintiff or for anybody to go on those tracks, or between them, or beside them, they are entitled to do it, but by doing that they are not entitled to stop the progress of the car, but if advised of the approach of the car, their duty is to get off. They have, however, the right to use it except when it is actually being used by the company,—that is, when a car is passing or is about to pass. Of course, if a car is passing they would not have a right to go on, or if it is about to pass they would not have a right to go on and stop the progress of the car, for the simple reason that while both parties have their rights and their liabilities, still, by reason of the peculiar character of the car, that can only run on tracks, it has the right of way under the law, and always has the right of way. Therefore a person would not be entitled to use that portion of the track when they saw

a car coming along, and throw themselves in the way of it, and prevent the progress of the car, or anything of that kind. * * *"

"That is, with the exception of the idea that wagons must get out of the way of the cars when the track is being used, the care to be exercised in order to avoid accidents is reciprocal. A man in charge of a car has to use due and reasonable care to avoid any accident. A person driving in the street has to use due and reasonable care in order to avoid an accident. So that, in the use of the street, their liabilities to use due and ordinary care for the protection of people and the protection of cars are reciprocal. The time when the car has the greater right to the street is when it is using it and about to pass a vehicle, or pass anything of that kind. I think you understand what the prayer means, and it is upon that theory that this case is to be adjudged by you."

Certain instructions asked by defendant embodying an opposed proposition of law were refused.

We think there was no error in this instruction. *Capital Traction Co. v. Apple,* 34 App. D. C. 559, and cases cited therein. As was said in that case: "A street-car company has a preferential right of way over its own tracks, which all persons, under ordinary conditions, must respect. * * * At the same time, the streets occupied by tracks are open to all proper uses of the people, who are frequently compelled to cross or to briefly occupy the tracks in going to and from their homes and about their daily business. The railway company has no exclusive right to the use of the parts of the streets occupied by its tracks. Railway and people alike must exercise their respective rights, with due regard to the rights of each other. They must exercise reasonable care under the circumstances of each particular case."

This preferential right of way is justified not only by the public convenience, to serve which the franchises of the street railways have been granted, but also by the conditions under which alone they can be exercised. Other vehicles can use any portion of the streets; street cars are confined to their tracks. But as

the streets are for other public uses also, it must sometimes happen that cars will be temporarily delayed by the occasional exigencies of these other public uses. One public demand or convenience, though of greater importance, must sometimes yield temporarily to another. But while these conditions may sometimes justify the temporary occupation of the car tracks by other vehicles, any unnecessary or wilful obstruction of the passage of the cars is unlawful. When such wilful obstructions occur, the car company may not wilfully or negligently run into other vehicles, but may prosecute the offenders for their violation of the law.

Moreover, police are stationed in the streets whose duty it is to see that the laws and police regulations are duly observed. Prompt and strict enforcement of the law would soon remove the evils if such exist.

4. Several instructions that were given at the request of plaintiff, and excepted to at the time, charge the jury, substantially, that it is the duty of persons in charge of a car to use reasonable care and diligence to observe whether vehicles a short distance in front of them are on or so near the track as to be in danger of being struck by the car, and that if they see such danger it is their duty to give timely warning of the approach of the car, and to keep the latter under such control that it may be stopped in time to prevent injury; and that the car driver is not relieved of this duty, even if the driver of the vehicle is negligent.

To a certain extent these embody a proposition contained in the preceding instruction. In so far as they embody the proposition that though one may be in peril through his own negligence, one who perceives that peril is bound to exercise ordinary care to prevent doing him an injury, they are correct. *Capital Traction Co.* v. *Divver,* 33 App. D. C. 332–336; *Capital Traction Co.* v. *Apple,* supra. Nor was it error to refuse defendant's special instruction to the effect that, if the car driver wilfully ran down the defendant's machine, there could be no recovery. The evidence did not indicate a wilful, inten-

tional injury by the car driver, and the instruction was therefore inapplicable.

5. We perceive no error in the plaintiff's special instruction to the effect that the burden of proving plaintiff's contributory negligence was on the defendant. This states a familiar principle of law. Of course, a plaintiff's contributory negligence may appear on his own evidence, but the objection was not on this ground, nor was such an instruction asked by the defendant.

The chief objection stated is that "the prayer refers only to the subject of contributory negligence, and contains no reference whatever to the fact that the plaintiff was claimed by the defendant to have been guilty of negligence concurring with any possible negligence of the defendant at the very moment of the said collision."

We are unable to appreciate the distinction sought to be made between concurrent and contributory negligence as applied to the conditions of this case. If, as defendant contends, plaintiff was guilty of negligence in driving on or dangerously near the car track, and thereby concurred in bringing about the collision, her concurring negligence constitutes what is generally designated in legal nomenclature as contributory. Such contributory or concurring negligence bars recovery for injuries sustained, unless under the exceptional condition considered in the preceding paragraph. That plaintiff was not guilty of such negligence, as matter of law, we think is clear, and the question was properly submitted to the determination of the jury. If, as testified to by some of defendant's witnesses, the plaintiff drove against or in front of the car, the jury were charged that she could not recover, in the following instruction given at the request of the defendant:

"If the jury shall find from the evidence that, on the occasion in question, the plaintiff was driving an automobile along Seventh street at the place in question, and that, in order to pass a coal cart in front of her, she turned to the left, and drove on the track of the defendant, so close to an approaching car that the motorman thereof had not sufficient time, after she drove upon the track, to stop his said car, and that in consequence

thereof he struck and injured her machine and herself, then the jury are instructed that the plaintiff cannot recover."

6. Several instructions were asked by the defendant, embodying the proposition that it was the duty of the plaintiff to look and listen before going upon the track and while thereon, and that her failure to do so was negligence as a matter of law. We extract a paragraph from one of these refused instructions:

"They should in all cases, before proceeding to cross or travel along said track, carefully look and listen to ascertain whether a car is approaching, and the failure on the part of those in charge of the car to give the usual or required signals, such as the ringing of a bell, will not excuse or justify the traveler in attempting to cross or drive along a railroad track without the exercise of that reasonable precaution of looking and listening for the approach of a train. Therefore, if the jury shall find from the evidence that, on the occasion in question, the plaintiff undertook to drive her automobile along the track of the defendant, or so close thereto as to be in danger of being struck by a passing car, without the aforesaid reasonable precaution of looking and listening for the approach of a car, and that she was struck and injured by a car whose approach she could have detected had she looked and listened, then she is not entitled to recover in this action."

The same proposition, in varying form, is embodied in several other special instructions, all of which were refused. The court carefully instructed the jury that it was plaintiff's duty to exercise reasonable care in going upon the tracks, also that she had no right to go upon the track when a car is about to pass along, and no right to stop the progress of a car. There was no error in the refusal of the special instructions.

(1) The question of the respective rights of car companies and of the general public in the use of the streets is incidentally involved under this assignment, but has been heretofore fully considered.

(2) While it is the duty of every one, under ordinary circumstances, to use his eyes and ears amid conditions of danger, the failure to look and listen before entering upon a street car

track does not constitute negligence as a matter of law. *Capital Traction Co.* v. *Apple,* supra. Negligence in this respect depends upon the circumstances of the particular case, and is for the determination of the jury. The Case of *Apple,* supra, was that of a pedestrian crossing the track.

(3). The precaution of looking behind for a coming car is less applicable in cases like this, where one is driving on a track in a vehicle that itself requires care in management. Moreover, the top of the machine made it difficult, if not impossible, to keep a lookout behind. In an analogous case, the supreme court of Washington, in reversing a judgment for a defendant, referred to the proposition in the charge of the court, and stated the law as follows, per Chadwick, J.: "His decision rests upon the proposition that the mere fact that plaintiff's chauffeur was driving his automobile upon the street car track without looking back or anticipating the approach of a car was negligence *per se.* The street and the whole width thereof was open to vehicles, and it has been frequently held that the mere use of a car track by the driver of a vehicle is not negligence as a matter of law. *North Chicago Electric R. Co.* v. *Peuser,* 190 Ill. 67, 60 N. E. 78; *Mertz* v. *Detroit Electric R. Co.* 125 Mich. 11, 83 N. W. 1036; *Traver* v. *Spokane Street R. Co.* 25 Wash. 225, 65 Pac. 284, 27 Am. & Eng. Enc. Law, 2d ed. p. 57. It is true that it puts upon the driver of the vehicle a greater degree of care, but it does not put upon him the burden of keeping a lookout to the rear to the exclusion of his duty to look ahead. The duty to look ahead is paramount." He further said that it was the duty of the coming car to give warning so that the driver may have time to clear the way, and that "whether the motorman had no reason to anticipate danger cannot be found, as a matter of law, from the mere fact that the car had a right of way over the street car track. Such a rule would exempt street car companies entirely. * * * If the jury found that he did, or should have seen, the automobile in time to avoid the accident, and did not do so, he would be negligent. If it found that he did not and could not, in the exercise of reasonable care and prudence, see the automobile in time to prevent the accident, he

would not be guilty of negligence." *Baldie* v. *Tacoma R. & Power Co.* 52 Wash. 75, 77, 79, 100 Pac. 162. See also *Tash-jian* v. *Worcester Consol. Street R. Co.* 177 Mass. 75, 81, 58 N. E. 281; *Vincent* v. *Norton & T. Street R. Co.* 180 Mass. 104, 105, 61 N. E. 822. In the last-named case a covered baker's wagon, closed with drawers and boxes, was run into by a car coming up behind it. Mr. Chief Justice Holmes, in delivering the opinion affirming a judgment for the plaintiff, said:

"It was not negligence to drive such a wagon in the public streets, even those containing street railway tracks. It was not negligent or unlawful to drive upon the tracks. The fact that the horse was walking makes the plaintiff's case no worse. As against a car coming up behind him the driver would have done his duty by getting off the track when he knew of its approach. *Com.* v. *Temple,* 14 Gray, 69–78. But the driver did not know of it. If the bell was rung, those in the wagon testified that they did not hear it. They were not bound to keep an impossible watch upon the rear. See *Benjamin* v. *Holyoke Street R. Co.* 160 Mass. 3, 4, 39 Am. St. Rep. 446, 35 N. E. 95. The defendant could not run them down from behind under any ordinary circumstances, without negligence or wilful wrong, and this they may be supposed to have known. There were no special circumstances in this case. The wagon was plainly visible in front of the car. There was sufficient evidence of the defendant's negligence and of the plaintiff's due care."

7. In addition to what has been said in regard to the propriety of submitting the issues of the defendant's negligence and plaintiff's contributory negligence to the jury, it is sufficient to say, in respect of the refusal to direct a verdict for the defendant, that the instruction, apparently, was based largely on a view of the law relating to the rights and duties of users of the streets, the soundness of which we have denied. The points considered embrace all those of importance in the case and it is unnecessary to discuss any others.

We find no error in the proceedings on the trial, and the judgment will be affirmed with costs.                    *Affirmed.*

Mr. Justice VAN ORSDEL concurring:

I concur with my associates in the conclusion that the judgment of the court below should be affirmed. I must, however, dissent from that portion of the opinion which declares that, "while it is the duty of everyone under ordinary circumstances to use his eyes and ears amid conditions of danger, the failure to look and listen before entering upon a street-car track does not constitute negligence as matter of law. *Capital Traction Co.* v. *Apple,* 34 App. D. C. 559. Negligence in this respect depends upon the circumstances of the particular case, and is for the determination of the jury." The statement referred to in the opinion of the court in the *Apple Case* is as follows: "That plaintiff's intestate did not stop, look, and listen before crossing the track in a city street would not warrant the conclusion of contributory negligence as a matter of law." It will be observed, from a comparison of these two statements, that the court in the case at bar has entirely lost sight of the distinction between an act which is negligent in itself, and an act, though negligent, which must depend upon attending facts and circumstances before it can be said to be, as matter of law, contributory negligence. I found no difficulty in agreeing in the *Apple Case* that there was nothing in the facts there which would warrant the conclusion that the mere going upon the tracks of the defendant company, without looking and listening, was sufficient in itself to constitute contributory negligence.

The above declaration of the court in the present case is equivalent to the announcement of a rule of law in this District that it is never, under any state of facts, negligence, as matter of law, for a pedestrian or driver of a vehicle to enter upon the tracks of a street railway without first looking and listening for the approach of cars. It was unnecessary for the court to indulge in the above statements in either the *Apple Case* or the one at bar, but since the rule here announced might be construed as the unanimous holding of the court, I cannot let it pass without an expression of my views.

In the *Apple Case* the plaintiff undertook to cross the tracks

of the defendant company, and was struck by a car running at an unlawful rate of speed. If the train had been moving at a lawful rate of speed, the plaintiff would have had sufficient time to cross the track in safety. There was also evidence tending to show that the motorman was negligent in not giving warning by the sounding of the gong, and in not stopping, or attempting to stop, his car when, by the exercise of reasonable care, he could have discovered the perilous position of the plaintiff. But in that case there was evidence that plaintiff did look before entering upon the tracks, and the case was tried upon that theory. The whole question of contributory negligence was therefore one for the jury.

In the present case I am content with the distinction made by Mr. Justice Holmes in *Vincent* v. *Norton & T. Street R. Co.* 180 Mass. 104, 61 N. E. 822. I can recognize a distinct difference between a person driving a closed vehicle along a street car track failing to keep a constant lookout behind for the approach of a car, and a pedestrian or driver of a vehicle attempting, without looking or listening, to cross a track in the presence or hearing of an approaching train. Hence there is no occasion in this case to announce a doctrine which to me seems utterly foreign to the law.

The duty to look and listen before crossing either a steam or street railway is alike imperative. The reason for this is easily understood. The rule is universal that it is negligence for a person to enter a place where danger is known to exist, or where danger is clearly apparent, without using his senses to avoid accident. A railway track, wherever situated, is always a warning of danger to persons entering upon it. It follows that any person entering this danger zone must use his senses to avoid accident, and the only senses that would be of any avail are sight and hearing. I therefore conceive it to be the law that it is always negligence to enter upon a street car track without looking and listening, but whether it is contributory negligence may be either a matter of fact or a matter of law, according to the facts and circumstances of the particular case.

The track of either a steam or street railway is, of itself, a

warning of danger to those about to go upon it. It constitutes a danger zone, into which no one may enter without the exercise of ordinary and reasonable care for his own safety. He is bound to avoid, and not invite, accident. This court said in *Warner* v. *Baltimore & O. R. Co.* 7 App. D. C. 79: "It has been repeatedly said that the very presence of a railroad track is itself notice of danger; and no man of ordinary intelligence has the right to go upon it without taking the ordinary precaution of stopping and looking for approaching trains." Or, as was said in *Elliott* v. *Chicago, M. & St. P. R. Co.* 150 U. S. 245, 37 L. ed. 1068, 14 Sup. Ct. Rep. 85: "The track itself, as it seems necessary to iterate and reiterate, is itself a warning. It is a place of danger. It can never be assumed that cars are not approaching on a track, or that there is no danger therefrom." To the same effect are *Mynning* v. *Detroit, L. & N. R. Co.* 59 Mich. 257, 26 N. W. 514; *Maryland C. R. Co.* v. *Neubeur,* 62 Md. 391.

That it is not always contributory negligence as matter of law, but that it is always negligence, to enter upon either a steam railway track or a street car track without first looking and listening, I conceive to be the established law of this country. The rule announced in *Chicago, R. I. & P. R. Co.* v. *Houston,* 95 U. S. 697, 24 L. ed. 542, has been followed by that court, and is the rule binding upon us. In that case the court said with respect to a woman who was struck upon a railroad track: "She was bound to listen and to look, before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses, she could not have failed both to hear and to see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train coming, and yet undertook to cross the track, instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity cannot be cast upon the defendant. No railroad com-

pany can be held for a failure of experiments of that kind. If one chooses, in such a position, to take risks, he must bear the possible consequences of failure." To the same effect are *Schofield* v. *Chicago, M. & St. P. R. Co.* 114 U. S. 615, 29 L. ed. 224, 5 Sup. Ct. Rep. 1125; *Elliott* v. *Chicago, M. & St. P. R. Co.* supra.

I am aware that a distinction is made between the degree of care imposed upon a person entering upon the tracks of a steam railway, and one going upon street-car tracks on a public street. The distinction, when narrowed to the duty of using the senses to avoid danger, is one more of fiction than of law. It consists not so much in the duty of one entering upon the track to look and listen, as to attendant conditions and circumstances arising from the common use of the street that will, in many cases like the present, modify the rule and present a state of facts touching the question of contributory negligence, which should be submitted to the jury. The facts and circumstances which in a given case would constitute contributory negligence in case of an accident occurring on the tracks of a steam railway, owing to the less strict application of the rule, might fall far short of establishing such negligence in the case of a street railway accident. The difference in the application of the rule relates not to a particular fact, as the failure to look and listen, but to all the facts and circumstances surrounding the particular case. What the court could say was contributory negligence, as matter of law, in the case of the steam railway, might not constitute such negligence in the case of the street railway. The difference, however, in the application of the rule is one of degree arising from the whole case, and not from the duty to look and listen.

I have been unable to find a single authority, State or Federal, which lays down the absolute rule that a person may enter upon a street car track without observing the precaution of looking and listening, and relieve himself of the charge of negligence. If such negligence be the contributing, proximate cause of the accident, even the concurring negligence of the railway company will not justify the submission of the question

of contributory negligence to the jury. It is also the law that where one entering upon a railway track looks and listens so carelessly that his going upon the track becomes the proximate cause of the accident, he is in no better position than if he had neglected to observe these precautions.

A recent opinion by Circuit Judge Van Devanter of the eighth circuit, in *Denver City Tramway Co.* v. *Cobb,* 90 C. C. A. 459, 164 Fed. 41, well expresses the law as follows: "The negligence of the defendant consisted in a failure to give a timely signal or warning of the approach of the car, and in a failure to make timely observation of the surroundings at the crossing, so that the speed might be checked or the car stopped in time to avoid a collision, if there was occasion to apprehend one. But the injury was not wilfully or wantonly inflicted. On the contrary, when it was discovered that a collision was probable, all was done that could be done to avoid it, and the car was stopped within the shortest possible distance. We think the case is plainly one where both parties were negligent, each having disregarded his own duty, and seemingly relied upon a performance of the duty of the other, and where their concurring negligence resulted in an injury which would have been avoided if the duty of either had been performed. In such a case the law gives no right of recovery. *Schofield* v. *Chicago, M. & St. P. R. Co.* supra; *Chicago & N. W. R. Co.* v. *Andrews,* 64 C. C. A. 399, 408, 130 Fed. 65, 74; Id. 195 U. S. 628, 49 L. ed. 351, 25 Sup. Ct. Rep. 787; *Chicago, R. I. & P. R. Co.* v. *Crisman,* 19 Colo. 30, 34 Pac. 286; *Hafner* v. *St. Louis Transit Co.* 197 Mo. 196, 94 S. W. 291; *O'Brien* v. *St. Paul City R. Co.* 98 Minn. 205, 108 N. W. 805. But it is urged that the plaintiff's duty was performed because, before leaving the sidewalk, he looked along both streets, and saw no car. It must be held otherwise. The purpose in requiring him to look at all made it necessary that he should do so at a place and time when it would be reasonably calculated to be effectual for his protection. His looking at the time and place selected did not satisfy this requirement. His view along Broadway was then so obstructed that the car, which the collision showed was

in close proximity to the crossing, could not be seen by him. It was after he passed the coal wagon that his view became unobstructed. He should have looked again at that time, and his failure to do so was negligence. *Chicago G. W. R. Co.* v. *Smith,* 73 C. C. A. 164, 141 Fed. 930; *Saltman* v. *Boston Elev. R. Co.* 187 Mass. 243, 72 N. E. 950; *Bartlett* v. *Worcester Consol. Street R. Co.* 189 Mass. 360, 75 N. E. 706; *Hafner* v. *St. Louis Transit Co.* supra; *Colorado & S. R. Co.* v. *Thomas,* 33 Colo. 517, 70 L.R.A. 681, 81 Pac. 801, 3 A. & E. Ann. Cas. 700." To the same effect are *Pittsburgh R. Co.* v. *Cluff,* 79 C. C. A. 438, 149 Fed. 732; *Denver City Tramway Co.* v. *Norton,* 73 C. C. A. 1, 141 Fed. 599; *Pyle* v. *Clark,* 25 C. C. A. 190, 49 U. S. App. 260, 79 Fed. 744.

This imperative duty to look and listen before entering upon a street railway track is also announced in the following cases: *Reiss* v. *Metropolitan Street R. Co.* 28 Misc. 198, 58 N. Y. Supp. 1024; *Clancy* v. *Troy & L. R. Co.* 88 Hun, 496, 34 N. Y. Supp. 877; *Lefkowitz* v. *Metropolitan Street R. Co.* 26 Misc. 787, 56 N. Y. Supp. 215; *Smith* v. *Electric Traction Co.* 187 Pa. 110, 40 Atl. 966; *Warner* v. *People's Street R. Co.* 141 Pa. 615, 21 Atl. 737; *Thomas* v. *Citizens' Pass. R. Co.* 132 Pa. 504, 19 Atl. 286; *Wood* v. *Detroit City Street R. Co.* 52 Mich. 402, 50 Am. Rep. 259, 18 N. W. 124; *Houghton* v. *Chicago & G. T. R. Co.* 99 Mich. 308, 58 N. W. 314; *McGee* v. *Consolidated Street R. Co.* 102 Mich. 107, 26 L.R.A. 300, 47 Am. St. Rep. 507, 60 N. W. 293; *Volosko* v. *Interurban Street R. Co.* 190 N. Y. 206, 15 L.R.A.(N.S.) 1117, 82 N. E. 1090; *Garvick* v. *United R. & Electric Co.* 101 Md. 239, 61 Atl. 138; *Hurley* v. *West End Street R. Co.* 180 Mass. 370, 62 N. E. 263.

In *Willis* v. *Boston & N. Street R. Co.* 202 Mass. 463, 89 N. E. 31, the court said: "It is evident, we think, that the plaintiff must have stepped upon the track almost directly in front of a rapidly approaching car which was in plain sight. He acknowledged on cross-examination that the car must have been in close proximity to him when, as he testified, he looked. The case comes, it seems to us, within the class of cases in which

it has been held that the plaintiff, if he looked or listened, must have done so carelessly, and is consequently in no better position than if he had not looked and listened at all. *Beirne* v. *Lawrence & M. Street R. Co.* 197 Mass. 173, 83 N. E. 359; *Fitzgerald* v. *Boston Elev. R. Co.* 194 Mass. 242, 80 N. E. 224; *Donovan* v. *Lynn & B. R. Co.* 185 Mass. 533, 70 N. E. 1029; *Mathes* v. *Lowell, L. & H. Street R. Co.* 177 Mass. 416, 59 N. E. 77; *Roberts* v. *New York, N. H. & H. R. Co.* 175 Mass. 296, 56 N. E. 559."

Until the present case, the unbroken line of decision in this court has been to the effect that one who fails to look and listen before entering upon a street railway is guilty of negligence; and if the negligence be the proximate cause of the accident, it then becomes contributory negligence as matter of law. In *Harten* v. *Brightwood R. Co.* 18 App. D. C. 260, the present Chief Justice, delivering the opinion of the court, said: "Giving the plaintiff the benefit of every inference that can be fairly deduced from her own account of the cause of her injuries, we find no error in the instruction given to the jury to find for the defendant which inflicted them. It is unnecessary to consider whether the defendant operating the car which did the injury was guilty of negligence that would warrant the submission of that question to the jury, for we are of the opinion that the plaintiff was plainly guilty of contributory negligence. The accident could not have occurred had she exercised any degree of care before crossing the tracks. She was familiar with the place, and knew that a car might be expected upon the track at any moment. The track was practically straight and wholly unobstructed for several hundred yards. One looking up the track for the coming car could not fail to see it, and it was not possible for the car to traverse the space along which it was clearly visible, between the time the plaintiff looked for it as she passed from one track to the other, and the moment when she stepped upon the rail and was struck by the fender attached to the front of the car." It is somewhat difficult to reconcile this able expression of the law with the utterance under consideration in the present case.

In *Barrett* v. *Columbia R. Co.* 20 App. D. C. 381, Chief Justice Alvey, speaking for the court, said: "The accident occurred in open daylight. The plaintiff was familiar with the location and all its environments. We must suppose that he well understood the dangers in attempting to cross the double tracks of a street railroad on a bicycle, without first seeing that he could safely do so without coming in conflict with passing cars. In this case the whole scene was open to the plaintiff, and he was required to exercise not only his senses of sight and hearing, but his common sense as well. Unfortunately for himself, he undertook to follow upon the north side of the west-bound car for a short distance, and then suddenly to turn and attempt to ride across the tracks immediately behind the passing car, without knowing, or taking the precaution to learn, what he might encounter on the east-bound tracks." To the same effect is *Hurdle* v. *Washington & G. R. Co.* 8 App. D. C. 120.

While the line between negligence as matter of law and negligence in fact is not well defined, one of the clearest distinctions that I have observed is found in the opinion of Mr. Justice Morris in *Washington & G. R. Co.* v. *Wright,* 7 App. D. C. 295: "It appears to us, however, that what we said in the recent case of *Warner* v. *Baltimore & O. R. Co.* 7 App. D. C. 79, may serve to aid us in the consideration of the subject. There we said that no one is entitled to disregard with impunity the usual safeguards and the usual precautions which every person of reasonable mind and ordinary intelligence recognizes as right and proper to be observed when dealing with the modern instrumentalities of rapid transit, unless there has been some inducement, expressed or implied, held out by the railroad company or its agents, that one may depart therefrom without danger. It seems to us to be the rule deduced from all the authorities, that when a railroad company creates a situation, or permits a condition of things to exist, which it is its duty to make a situation or condition of safety, and a person who is brought into relation with the company, and who has the right to rely upon the safety of the situation so created or of the condition of things so permitted to exist, is injured, notwithstanding the

assurance so held out to him, he is not chargeable, as a matter of law, with contributory negligence, although the situation or condition was in its nature one of risk and danger; and the question of negligence in such a case is one of fact, to be submitted to a jury. The converse of the proposition is likewise true, that when a defendant has had no part in the creation of a situation which has induced a plaintiff to assume a position of obvious peril which otherwise he would not have assumed, and when the position is plainly one that, in the absence of the circumstances supposed to justify it, should charge the person as for an act of negligence, it would be manifestly unjust to hold the defendant for that which he did not cause and could not control."

What inducement is held out by the railroad company to persons on the street to blindly and recklessly enter upon its tracks in front of approaching cars? The track itself, while a warning of danger, does not create a dangerous trap into which unsuspecting victims may enter. It is placed there by authority of law, for a wholly beneficial purpose. It is a comparatively safe place to go in the exercise of ordinary care, and when one disregards his duty to be careful, and enters upon the tracks in front of an approaching car, he, and not the railway company, creates the dangerous situation. His own negligence has placed him in a dangerous position, in which, if he is injured, he must accept the consequences. His act, if the proximate cause of the injury, is contributory negligence as matter of law.

The relation between the street-car company and the public in the use of the street is a reciprocal one. The railway company is chartered not for the benefit of the corporation which owns and operates the system, but as a public utility, for the convenience and accommodation of the public. Cities cannot be built and maintained without a system of rapid transit, and it is to meet this necessity that street car companies are incorporated and granted the privilege of laying their tracks and operating their cars in the public streets. It may safely be said that four fifths of the population of Washington use this method of travel, and the rights of this large percentage of the public are

to be considered in determining this reciprocal right to the use of the streets. It is because the street car must move on a definite track, move rapidly, and furnish means of transportation for a large proportion of those using the streets that it is accorded by law a preferential right of way as against pedestrians or drivers of vehicles, who constitute but a small percentage of the traveling public. It must be conceded that this legal preferential right of way accorded the railway company means something. There must be some obligation resting upon a pedestrian or the driver of a vehicle to respect this right. But what obligation exists if a person may blindly and deafly walk or drive in front of a street car, under circumstances which render it impossible for the motorman to prevent an accident, and still impose upon the railway company the burden of establishing, to the satisfaction of a jury, that such person was in fact guilty of contributory negligence?

Under the rule announced by the court in this case, the trial court would be limited in instructing the jury to charge that, to authorize recovery, they must merely find that the injured party exercised ordinary care and prudence in entering upon the track. Why not give the same charge as to the duty of the motorman? As the agent of the railway company, he has the right of way, and the superior right to the use of the street, at the point where the accident occurs. But the court will properly instruct the jury that the motorman is required to use ordinary care and prudence in the movement and operation of his car, and that, before he can be said to have exercised such care and prudence, he must keep a lookout at all times for objects ahead on the track. If he sees an object on the track or approaching dangerously near to it, it is his duty to sound the gong, and have his car under such control that he can speedily stop it, should the danger of an accident become imminent. This general form of instruction as to the duty of the motorman is undoubtedly correct; but, in his case, the exercise of reasonable care and prudence becomes a conclusion for the jury to draw from the existence of certain definite facts pointed out by the court, and which must appear from the evidence in the case; while, in

the case of the pedestrian or driver of a vehicle, this conclusion is left to be drawn not from a given state of facts, or from the evidence adduced at the trial, but from the whim and imagination of the jurymen. This is not the law. There are facts that must exist before the pedestrian or driver of a vehicle entering upon a street car track, and injured while in this danger zone, can claim that he has not been negligent, and, if negligent, that he has not been guilty of contributory negligence. He must exercise the precautions of a sensible and reasonable man, and those precautions can alone consist in carefully using his senses to the extent of looking and listening before entering upon the tracks; and if a car is approaching in full view, dangerously near, it is not only his duty to see it, but to wait until it has passed before attempting to cross. If the chances are even that he can cross without being caught, it is still his duty to respect the paramount right of the railway company, and wait until the car has passed. At this point, where the chances of avoiding a collision are barely equal, the pedestrian or driver of a vehicle has not an equal right with the railway company to use that part of the street occupied by the railway tracks. The time has arrived when the rights of the railway company become superior. The motorman at this juncture has the right to assume that a person approaching the track will use his senses and look and listen before entering upon the track, and, until it becomes apparent that he is blindly and deafly walking or driving in front of the car, the motorman is entitled to rely upon this assumption. Of course, as soon as the danger of an accident becomes apparent, it is his duty to use every means at hand to prevent the accident; and it is his duty, not only to keep a lookout and sound the alarm, but to have his car in hand for such an emergency. In *Belton* v. *Baxter,* 54 N. Y. 245, 13 Am. Rep. 578, it was said: "It is negligence *per se* for a foot traveler to attempt to cross a public thoroughfare ahead of vehicles of any kind under such circumstances, upon nice calculations of the chances of injury. If such attempt be made, and the calculations fail, to the plaintiff's harm, he can have no

redress for injuries received in his mistaken effort.   It is not the exercise of common or ordinary care."

If it be held that a motorman is bound to bring his car to a standstill every time he sees a person or vehicle approaching the track, rapid transit would be an impossibility, and the great majority of the traveling public would be deprived of the convenience extended through the agency of a system for that purpose.   Of course, I will concede that the failure to look and listen before crossing a street railway will not, under all circumstances, *per se* constitute such contributory negligence as will prevent recovery.   *Burbridge* v. *Kansas City Cable R. Co.* 36 Mo. App. 669; *McClain* v. *Brooklyn City R. Co.* 116 N. Y. 459, 22 N. E. 1062.   While insisting that it is always negligence, I will not contend that it is always contributory negligence, as matter of law, to enter upon a street car track without looking and listening; but where the danger is apparent, and the pedestrian or driver of a vehicle is not prevented by some obstacle or the exigencies of travel, as in the present case, from a reasonable opportunity to observe the approaching car, but blindly and deafly advances into inevitable danger, he cannot cast upon the railway company the obligation of establishing his contributory negligence by proof to the satisfaction of a jury.

Before contributory negligence, as matter of law, can exist, it must consist in such an act as not only contributes to, but is the proximate cause of, the accident.   It may well be that, because of the common use made by the traveling public of the streets, a person may enter upon a street car track under conditions where the mere going upon the track without looking and listening would not of itself constitute the proximate cause of the accident.   This distinction is to be drawn from the facts in the particular case under consideration.   A person may enter upon the tracks where it is perfectly safe, and, though it is negligent to do so without looking and listening, it may not of itself constitute contributory negligence as matter of law.   It may be, as in the case at bar, that, while it was negligence for the plaintiff to go upon the tracks at a point seven blocks from

the scene of the accident without looking and listening, the proximate cause of the accident cannot be traced to that act, but to the failure of the motorman to give timely warning of the approach of the car, and to the running down of plaintiff's automobile at a point where the conditions were such as to prevent escape from the track. When the danger became imminent through the motorman's failure to give notice of the approach of the car, plaintiff, by reason of conditions known to the motorman, was deprived of an avenue of escape.

But these exceptions will not admit of the broad statement that the entering upon a street car track by a pedestrian or the driver of a vehicle, without using his senses of sight and hearing, is never, as matter of law, the proximate cause of the accident or collision which follows as a direct result of his heedless conduct. Where one recklessly goes upon the track when the car is approaching at a point dangerously near, where its approach can be seen or heard, and the accident results either solely from the act of the injured party, or through the concurrent negligence of the railroad company, the heedless entering upon the track constitutes the proximate cause of the accident, and will prevent recovery, unless the motorman, by the exercise of reasonable care, could have prevented the collision after the danger became imminent.

The trial judge does not sit as a mere moderator or presiding officer at the trial. It is his duty to apply the law to the case before him. If the facts on a given point clearly forbid its submission to the jury, it is the duty of the court to withdraw it from their consideration, and if it involves the plaintiff's entire case, a nonsuit should be entered. It is as erroneous to refuse to enter a nonsuit when the law entitles the defendant to such relief, as it is to erroneously grant it. There is nothing so sacred about the right of trial by jury that a judge should omit to perform his duty when it is clearly indicated by the law. Litigants are entitled to this consideration at the hands of the court; and it is the duty of the court in such instances, where the law, when applied to the facts disclosed, warrants it, to terminate the case. The jury is not the sole machinery in the

trial court. The judge at all times has control of the cause, and it is his duty to direct the jury as the law requires, irrespective of the interests involved.